**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil No. 09-1070 (JLL) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| JEFF SMITH, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> JOSEPH ARUANNO, #363
> Special Treatment Unit- Annex
> P.O. Box #CN905
> Avenel, NJ 07001

**LINARES**, District Judge:

Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent

Predator Act, seeks to bring this action in forma pauperis without prepayment of fees pursuant to

28 U.S.C. § 1915. Based on his affidavit of poverty, as amended, this Court will grant Plaintiff's

application to proceed in forma pauperis and direct the Clerk to file the Complaint without

prepayment of the filing fee.[1] See 28 U.S.C. § 1915(a). Having thoroughly reviewed Plaintiff's

allegations, this Court will dismiss the Complaint for failure to state a claim upon which relief

may be granted, without prejudice to the filing of an amended complaint stating a cognizable

claim under 42 U.S.C. § 1983.

---

[1] This Court denied Plaintiff's first application and administratively terminated this case
because Plaintiff's affidavit of poverty was deficient. Because Plaintiff reapplied for in forma
pauperis status, this Court is reopening the file.

## I. BACKGROUND

Plaintiff brings this action against Officer Jeff Smith, Nurse Morgan, Sgt. Franks, Dr. Merrill Main, Dr. Vivian Snaidman, Dr. Gabriel, Administrator Cindy Sweeney, then DHS Commissioner Jennifer Velez, then-DOC Commissioner George Hayman, University Medical and Dental of New Jersey, and 10 John and Jane Does. Plaintiff asserts the following facts:

> This case involves being denied access to proper medical care and to access to the medical area . . . . [T]his was the final straw as far as neglect and deliberate indifference in this issue which goes back many years as follows.

> While serving a prison sentence for the first time in my life for a crime I did not commit I had asked the nurse for an aspirin for a headache I had which the NJ Dept. of Corrections used to civilly commit me at the end of my sentence stating the headache was due to a serious head injury from a motor vehicle accident with absolutely no proof of such a delusion. From which the fact is they gave me the headache. An in any case should have been part of doctor\patient confidentiality.

> Then when I was committed I was approached by a doctor Vivian Snaidman who said she was my "care provider" and that her interview had "nothing to do with my commitment hearing" but even though I had told her I was advised not to talk to anyone, and did not speak with her, she did in fact attend my commitment hearing and testified that we spoke for hours which is totally false and resulted in my commitment. For which in any case also should have been confidential. And for which she continues to prepare reports to keep me committed.

> And though they have created a situation where we the residents fear going to the medical area when I have really needed to I was prescribed certain things for which Administrator Cindy Sweeney has denied them and told me to buy my own.

> And when I have spoke to Dr. Gabriel about breathing problems due to indoor smoking, a serious black mold problem inside the building, indoor welding that has taken place since I have been here, etc., and asked for outdoor yard access but was denied by

2

Cindy Sweeney stating, "It was not my yard period," even though not one person was using the yard.

And though I am not a prisoner when we need to see a dentist we are taken to a state prison in Avenel from the hospital I/we are housed at in Kearny NJ for dental service for which even that I have been refused, as I will prove by institutional complaints I have submitted, as well as refused my requests to see a private dentist.

Also, when I have submitted medical request slips there has been times when I was never called out for which upon inquiring about this was told they never received it despite handing it to them personally as required. And when I have been called out I have seen it take from 2 to 4 weeks for which by that time the flu/cold or other illness has subsided, but not before getting worse as is the case now with the cold or flu I have.

In closing this case is not just being denied medical treatment but being denied in fear of further commitment. And being denied access to the medical area by the guards such as being thrown out for attempting and being denied that I am hesitant on going there in fear of being harassed, threatened, physically and mentally assaulted which is not therapeutic which is what this farce is supposed to be about.

In this case I am requesting immediate medical attention upon request without fear of further commitment or physical injury which would be declaratory and injunctive. And for ten million dollars in punitive damages for the harm inflicted upon me physically and mentally, which ironically they also use to further my commitment.

(Docket entry #1-2 at pp. 8-9.)

Attached to Plaintiff's submission as exhibit A is a one-page document entitled "Being refused medication," which states:

Today, 3-1-09, I went to the medication line at 12:30 asking for only cough syrup and the nurse gave me a cup of pills and said I must take that before she would give me cough syrup. At that point I said there is nothing prescribed by a doctor here, that pills make my stomach sick, and that one of the pills she was trying to

3

give me, a little yellow one, makes me dizzy and groggy as well as
sick to my stomach for which she told me that, "I had to do it her
way or no way," which is not the first time she has done this to
myself and others but must be the last time.

And compounding this worse is that immediately upon questioning
her about this asking for only the syrup Officer Smith told me to,
"get the f— out of his line," which is not a isolated incident . . . all
of this is not just as incompetent as unprofessional but clearly is
not therapeutic.

In closing as to Officer Smith we now see an escalating situation
that has now gone critical and for which needs immediate
attention.

(Docket entry #1-1 at p. 10.)

## II.  STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat.

1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as

practicable after docketing, to review a complaint in a civil action in which a plaintiff is

proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2)(B).  The PLRA requires the Court to

sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief from a defendant who is immune

from such relief.  Id.

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations

describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see

also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

Addressing the clarifications as to the litigant's pleading requirement stated by the United

States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals

4

for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient

to pass muster under Rule 8.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir.

2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a
> plaintiff's obligation [is] to provide the 'grounds' of his
> 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . .
> ."[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain
> statement [must] possess enough heft to 'sho[w] that the pleader is
> entitled to relief.'" Id. at 1966.  [Hence] "factual allegations must
> be enough to raise a right to relief above the speculative level." Id.
> at 1965 & n.3.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the Supreme Court in its recent decision

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> [In any civil action, t]he pleading standard . . . demands more than
> an unadorned ["]the-defendant-unlawfully-harmed-me["]
> accusation. [Twombly, 550 U.S.] at 555 . . . .  A pleading that
> offers "labels and conclusions" or "a formulaic recitation of the
> elements of a cause of action will not do." [Id.] at 555.
> [Moreover,] the plausibility standard . . . asks for more than a sheer
> possibility that a defendant has acted unlawfully. Id. [Indeed, even
> w]here a complaint pleads facts that are "merely consistent with" a
> defendant's liability, [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'" Id. at 557
> (brackets omitted).  [A fortiori,] the tenet that a court must accept
> as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions [or to t]hreadbare recitals of the
> elements of a cause of action, supported by mere conclusory
> statements [, i.e., by] legal conclusion[s] couched as a factual
> allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement
> [or] that [defendants] adopted a policy "'because of,' not merely 'in
> spite of,' its adverse effects upon an identifiable group." . . . . [W]e
> do not reject these bald allegations on the ground that they are
> unrealistic or nonsensical. . . .  It is the conclusory nature of [these]
> allegations . . . that disentitles them to the presumption of truth. . . .
> [Finally,] the question [of sufficiency of] pleadings does not turn

> [on] the discovery process. <u>Twombly</u>, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint asserts some wrongs] "generally," [<u>i.e.</u>, as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope of developing actual facts through discovery].

<u>Iqbal</u>, 129 S. Ct. at 1949-54.

The Third Circuit observed that <u>Iqbal</u> hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[2] which was applied to federal complaints before <u>Twombly</u>. See <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009). Since <u>Iqbal</u>, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, a two-part analysis when reviewing a complaint for dismissal for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [See <u>Iqbal</u>, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in <u>Iqbal</u>.] In other words, a complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts. See <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"* <u>Iqbal</u>, [129 S. Ct. at 1949-50 (emphasis supplied)]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

---

[2]  The <u>Conley</u> court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. at 45-46.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  With these precepts in mind, the Court will determine whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### III.  DISCUSSION

A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.  Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

Plaintiff, a civilly committed sexually violent predator, brings this Complaint under §

1983 against Officer Jeff Smith, Nurse Morgan, Sgt. Franks, Dr. Merrill Main, Dr. Vivian

Snaidman, Dr. Gabriel, Administrator Cindy Sweeney, then DHS Commissioner Jennifer Velez,

then-DOC Commissioner George Hayman, University Medical and Dental of New Jersey, and 10

John and Jane Does.  University Medical and Dental of New Jersey, which presumably refers to

the University of Medicine and Dentistry of New Jersey, will be dismissed as defendant because

it is not a "person" which may be found liable under 42 U.S.C. § 1983.  See Will v. Michigan

Dept. of State Police, 491 U.S. 58 (1989).  Defendants Nurse Morgan, Dr. Merrill Main, Jennifer

Velez, and George Hayman will also be dismissed, without prejudice, as defendants.  Aside from

listing them in the caption, the Complaint does not mention these defendants.  However,

"vicarious liability is inapplicable to . . . § 1983 suits [and, to survive dismissal,] a plaintiff must

plead that each Government-official defendant, through the official's own actions, has violated

the Constitution." Iqbal, 129 S. Ct. at 1948.  Because the Complaint makes no allegations of

wrongdoing by these defendants and vicarious liability is inapplicable in § 1983 cases, the

Complaint will be dismissed for failure to state a claim against Nurse Morgan, Dr. Merrill Main,

Jennifer Velez, and George Hayman.

Although the body of the Complaint mentions Dr. Vivian Snaidman, Dr. Gabriel, Cindy

Sweeney, and Officer Smith by name, the factual assertions against these defendants are too

vague and conclusory to "nudge" Plaintiff's claims of denial of medical care "across the line

from conceivable to plausible," as required to satisfy the Iqbal standard.  Iqbal, 129 S. Ct. at

1951.  As the Supreme Court explained, the "pleading standard Rule 8 announces does not

require detailed factual allegations, but it demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation . . . . Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and

internal quotation marks omitted).

    The Supreme Court's decision in Iqbal illustrates the two-pronged approach. Iqbal

pleaded that the named defendants "'knew of, condoned, and willfully and maliciously agreed to

subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of

[his] religion, race, and/or national origin and for no legitimate penological interest.'" Iqbal, 129

S. Ct. at 1951. The Court determined that these "allegations are conclusory and not entitled to be

assumed true." Id. Next, the Court considered the non-conclusory factual allegations and

determined that they did not plausibly suggest an entitlement to relief because, in light of obvious

alternative explanation for defendant's conduct (i.e., a desire to keep suspected terrorists in the

most secure conditions available until they could be cleared), the complaint did not show that

defendants purposefully housed Iqbal in the most restrictive setting due to race, religion, or

national origin.

    In this Complaint, Plaintiff alleges that, although Dr. Snaidman approached Plaintiff on

an unspecified date and he "did not speak with her" (Docket entry #1-1 at p. 8), Dr. Snaidman

nevertheless testified on an unspecified date at Plaintiff's civil commitment hearing that "[she]

spoke [with Plaintiff] for hours which is totally false and resulted in my commitment. For which

in any case also should have been confidential." Id. These allegations do not show that Dr.

Snaidman violated Plaintiff's constitutional rights, since a witness who testifies in a judicial

proceeding enjoys absolute immunity from damages under § 1983 for false testimony. See

Briscoe v. LaHue, 460 U.S. 325, 330-346 (1983) (police officer who testifies in criminal trial

enjoys absolute witness immunity for false testimony); <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1467 and n.16 (3d Cir. 1992) (witness who testifies in judicial proceeding is absolutely immune for false testimony); <u>Williams v. Hepting</u>, 844 F.2d 138, 143 (3d Cir. 1988) (witness is entitled to absolute immunity from civil liability under § 1983 for perjured testimony at preliminary hearing and suppression hearings).  Thus, Plaintiff's claims against Dr. Snaidman must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff maintains that Cindy Sweeney violated his constitutional rights as follows.  On an unspecified date, Plaintiff "was prescribed certain things for which Administrator Cindy Sweeney has denied them and told me to buy my own."  (Docket entry #1-1 at p. 8.)  In addition, on an unspecified date, Plaintiff "asked for outdoor yard access but was denied by Cindy Sweeney stating, 'It was not my yard period,' even though not one person was using the yard." (<u>Id.</u>)  The denial of a request to go to the yard on one unspecified occasion does not rise to the level of a constitutional violation.  Moreover, the mere allegation that Sweeney denied Plaintiff's request for free access to unspecified "prescribed things" is too vague to state a constitutional claim of denial of access to medical treatment.  The claims against Sweeney will accordingly be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's reference to Dr. Gabriel in the body of the complaint is even more cryptic. Plaintiff alleges merely that he "spoke to Dr. Gabriel about breathing problems due to indoor smoking, a serious black mold problem inside the building, indoor welding that has taken place since I have been here, etc, and asked for outdoor yard access but was denied by Cindy Sweeney . . ."  (Docket entry #1-1 at p. 8.)  Significantly, Plaintiff does not state that he suffers with a breathing problem himself or even describe the nature of the breathing problem to which he

refers.  Nor does the complaint even insinuate that Dr. Gabriel ignored a request for medical care

for a serious medical need communicated by Plaintiff.  Rather, it can be inferred that, to the

extent that Plaintiff asked Dr. Gabriel for access to the yard (in order to avoid second hand

smoke and mold), Gabriel reasonably referred the request to Sweeney.  The Complaint fails to

allege facts showing that Dr. Gabriel violated Plaintiff's constitutional rights.  Accordingly, the

claims against Dr. Gabriel will be dismissed for failure to state a claim upon which relief may be

granted.

      In exhibit A to the Complaint, Plaintiff states that on March 1, 2009, defendant Officer

Smith instructed Plaintiff to get out of the medication line after Plaintiff refused to take a cup of

pills that a nurse gave Plaintiff in response to his request for cough syrup.  (Docket entry #1-1 at

p. 10.)  Plaintiff asserts that Sgt. Franks violated his constitutional rights by refusing to act when

Franks heard Smith instructing Plaintiff to leave the medication line.  Plaintiff further states that

Smith told Plaintiff to get out of Smith's unit when Plaintiff requested soap on one unspecified

occasion and ice on another.  Although Plaintiff describes Smith's language as unprofessional

and non-therapeutic, it is clear that an officer's verbal instruction directing a committed patient to

leave the medication line (when the patient refuses the medication offered) and to exit a unit

(when the patient asks for soap or ice) does not rise to a constitutional violation, however vulgar

the language used.  As the Complaint makes no further allegations regarding Franks or Smith, the

claims against those defendants will be dismissed for failure to state a claim upon which relief

may be granted.

      This Court is dismissing the claims against all named defendants for failure to state a

claim upon which relief may be granted.  However, because a court should not dismiss a

complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility, and Plaintiff may be able to assert facts stating a cognizable claim under 42 U.S.C. § 1983 against at least one named defendant, the dismissal of the Complaint will be without prejudice to the filing of an amended complaint stating a cognizable claim under § 1983 against at least one of the named defendants.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to proceed in forma pauperis and dismisses the Complaint, without prejudice to the filing of an amended complaint.  The Court will enter an appropriate Order.

_____

**JOSE L. LINARES, U.S.D.J.**

Dated: _____ 6 — 17 — , 2010

12