**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSEPH ARUANNO, | : | Civil No. 09-1070 (JLL) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| JEFF SMITH, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES:**

> JOSEPH ARUANNO, #363
> Special Treatment Unit- Annex
> P.O. Box #CN905
> Avenel, NJ 07001

**LINARES**, District Judge:

Joseph Aruanno, who is civilly committed under the New Jersey Sexually Violent Predator Act, filed a Complaint without prepayment of the filing fee. See 28 U.S.C. § 1915(a). This Court dismissed the Complaint for failure to state a claim upon which relief may be granted, without prejudice to the filing of an amended complaint stating a cognizable claim under 42 U.S.C. § 1983 against at least one named defendant. On July 6, 2010, Plaintiff filed an Amended Complaint. Having thoroughly reviewed Plaintiff's allegations in the Amended Complaint, this Court will dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

# I.  BACKGROUND

Plaintiff has been civilly committed as a sexually violent predator since 2004.  As

explained by the Third Circuit Court of Appeals,

> [i]n 1994, while in Florida, he exposed himself to two adolescent
> girls as they were walking home from school and engaged in lewd
> conduct in their presence.  As a result of this incident, Aruanno
> pled guilty to second-degree lewd conduct, and was sentenced to
> ten years' probation.  Just two years later, in 1996, Aruanno
> sexually molested an eight-year-old girl who had been playing on
> the front steps of her house in Wildwood, New Jersey.  A jury
> convicted Aruanno of second-degree sexual assault, and he was
> sentenced to ten years in prison, and disqualification from parole
> for five years.  The Appellate Division of the New Jersey Superior
> Court affirmed the conviction and sentence.  The New Jersey
> Supreme Court denied certification.  State v. Aruanno, 793 A. 2d
> 716 (N.J. 2002) (table op.).
>
> In April 2004, while Aruanno was still serving his prison sentence,
> the State of New Jersey . . . filed a petition to involuntarily commit
> Aruanno pursuant to the New Jersey Sexually Violent Predator Act
> ("SVPA), N.J.S.A. § 30:4-27.24 et seq.  . . . .
>
> At the commitment hearing, the State presented the testimony of
> Dr. Vivian Shnaidman . . . .  Dr. Shnaidman testified that Aruanno
> was a chronic paranoid schizophrenic, but her diagnosis explicitly
> ruled out diagnoses of exhibitionism and pedophilia.  Nevertheless,
> Dr. Shnaidman opined that Aruanno's schizophrenia, when
> combined with his previous violent conduct, created a "very high"
> risk of future violence.  In particular, because Aruanno refused to
> take psychotropic medication to treat his schizophrenia, he would
> continue to suffer from psychotic delusions which would render
> sex offender treatment useless.  According to Dr. Shnaidman,
> Aruanno would have serious difficulty controlling his sexually
> predatory behavior without undergoing treatment for his
> schizophrenia . . . .
>
> Aruanno testified on his own behalf at the hearing.  He denied
> committing either the Florida or the New Jersey offense, and
> testified that he believed the State had filed the commitment

> petition in retribution for his decision to go to trial for the New
> Jersey offense, rather than accepting a deal to plead guilty . . . .
>
> The state court found that Aruanno suffered from a mental
> abnormality which created "substantial, significant, severe
> difficulty controlling his sexually violent behavior," and granted
> the State's petition for involuntary commitment.  Aruanno
> appealed the order, and the Appellate Division affirmed.  In re
> Civil Commitment of J.A., 2007 WL 609284 (N.J. Super. Ct. App.
> Div. 2007).

Aruanno v. Hayman, C.A. No. 09-3499 slip op., pp. 2-4 (3d Cir. May 27, 2010).

In 2009, the Appellate Division of the New Jersey Superior Court reversed the Law Division's May 3, 2007, order denying post-conviction relief on the New Jersey conviction, vacated the conviction, and remanded the case.[1]  See State v. Aruanno, 2009 WL 1046033 (N.J. Super. Ct. App. Div. April 21, 2009), certif. denied, 199 N.J. 543 (2009) (table).

Since being detained in New Jersey, Mr. Aruanno has filed over 28 civil cases in this Court, and 27 appeals in the United States Court of Appeals for the Third Circuit.

The original Complaint in this case (Docket Entry #1) named the following defendants: Officer Jeff Smith, Nurse Morgan, Sgt. Franks, Dr. Merrill Main, Dr. Vivian Snaidman, Dr. Gabriel, Administrator Cindy Sweeney, DHS Commissioner Jennifer Velez, DOC Commissioner George Hayman, University Medical and Dental of New Jersey, and 10 John and Jane Does. Plaintiff asserted the following facts:

> This case involves being denied access to proper medical care and
> to access to the medical area . . . .  [T]his was the final straw as far
> as neglect and deliberate indifference in this issue which goes back
> many years as follows.

---

[1] This Court was not able to determine through online research the outcome of the remand.

3

While serving a prison sentence for the first time in my life for a crime I did not commit I had asked the nurse for an aspirin for a headache I had which the NJ Dept. of Corrections used to civilly commit me at the end of my sentence stating the headache was due to a serious head injury from a motor vehicle accident with absolutely no proof of such a delusion.  From which the fact is they gave me the headache.  An in any case should have been part of doctor\patient confidentiality.

Then when I was committed I was approached by a doctor Vivian Snaidman who said she was my "care provider" and that her interview had "nothing to do with my commitment hearing" but even though I had told her I was advised not to talk to anyone, and did not speak with her, she did in fact attend my commitment hearing and testified that we spoke for hours which is totally false and resulted in my commitment.  For which in any case also should have been confidential.  And for which she continues to prepare reports to keep me committed.

And though they have created a situation where we the residents fear going to the medical area when I have really needed to I was prescribed certain things for which Administrator Cindy Sweeney has denied them and told me to buy my own.

And when I have spoke to Dr. Gabriel about breathing problems due to indoor smoking, a serious black mold problem inside the building, indoor welding that has taken place since I have been here, etc., and asked for outdoor yard access but was denied by Cindy Sweeney stating, "It was not my yard period," even though not one person was using the yard.

And though I am not a prisoner when we need to see a dentist we are taken to a state prison in Avenel from the hospital I/we are housed at in Kearny NJ for dental service for which even that I have been refused, as I will prove by institutional complaints I have submitted, as well as refused my requests to see a private dentist.

Also, when I have submitted medical request slips there has been times when I was never called out for which upon inquiring about this was told they never received it despite handing it to them personally as required.  And when I have been called out I have seen it take from 2 to 4 weeks for which by that time the flu/cold or

4

other illness has subsided, but not before getting worse as is the case now with the cold or flu I have.

In closing this case is not just being denied medical treatment but being denied in fear of further commitment.  And being denied access to the medical area by the guards such as being thrown out for attempting and being denied that I am hesitant on going there in fear of being harassed, threatened, physically and mentally assaulted which is not therapeutic which is what this farce is supposed to be about.

In this case I am requesting immediate medical attention upon request without fear of further commitment or physical injury which would be declaratory and injunctive.  And for ten million dollars in punitive damages for the harm inflicted upon me physically and mentally, which ironically they also use to further my commitment.

(Docket entry #1-2 at pp. 8-9.)

In a one-page document attached to Plaintiff's submission, Plaintiff also stated:

Today, 3-1-09, I went to the medication line at 12:30 asking for only cough syrup and the nurse gave me a cup of pills and said I must take that before she would give me cough syrup.  At that point I said there is nothing prescribed by a doctor here, that pills make my stomach sick, and that one of the pills she was trying to give me, a little yellow one, makes me dizzy and groggy as well as sick to my stomach for which she told me that, "I had to do it her way or no way," which is not the first time she has done this to myself and others but must be the last time.

And compounding this worse is that immediately upon questioning her about this asking for only the syrup Officer Smith told me to, "get the f— out of his line," which is not a isolated incident . . .  all of this is not just as incompetent as unprofessional but clearly is not therapeutic.

In closing as to Officer Smith we now see an escalating situation that has now gone critical and for which needs immediate attention.

(Docket entry #1-1 at p. 10.)

5

By Opinion and Order entered June 22, 2010, this Court dismissed all claims and

defendants for failure to plead a claim under 42 U.S.C. § 1983 under the standard of Ashcroft v.

Iqbal, 129 S. Ct. 1937 (2009).  Specifically, this Court found:

> University Medical and Dental of New Jersey, which presumably
> refers to the University of Medicine and Dentistry of New Jersey,
> will be dismissed as defendant because it is not a "person" which
> may be found liable under 42 U.S.C. § 1983.  See Will v. Michigan
> Dept. of State Police, 491 U.S. 58 (1989).  Defendants Nurse
> Morgan, Dr. Merrill Main, Jennifer Velez, and George Hayman
> will also be dismissed, without prejudice, as defendants.  Aside
> from listing them in the caption, the Complaint does not mention
> these defendants.  However, "vicarious liability is inapplicable to .
> . . § 1983 suits [and, to survive dismissal,] a plaintiff must plead
> that each Government-official defendant, through the official's
> own actions, has violated the Constitution." Iqbal, 129 S. Ct. at
> 1948.  Because the Complaint makes no allegations of wrongdoing
> by these defendants and vicarious liability is inapplicable in § 1983
> cases, the Complaint will be dismissed for failure to state a claim
> against Nurse Morgan, Dr. Merrill Main, Jennifer Velez, and
> George Hayman.
>
> Although the body of the Complaint mentions Dr. Vivian
> Snaidman, Dr. Gabriel, Cindy Sweeney, and Officer Smith by
> name, the factual assertions against these defendants are too vague
> and conclusory to "nudge" Plaintiff's claims of denial of medical
> care "across the line from conceivable to plausible," as required to
> satisfy the Iqbal standard.  Iqbal, 129 S. Ct. at 1951.
>
> *                    *                    *
>
> In this Complaint, Plaintiff alleges that, although Dr. Snaidman
> approached Plaintiff on an unspecified date and he "did not speak
> with her" (Docket entry #1-1 at p. 8), Dr. Snaidman nevertheless
> testified on an unspecified date at Plaintiff's civil commitment
> hearing that "[she] spoke [with Plaintiff] for hours which is totally
> false and resulted in my commitment.  For which in any case also
> should have been confidential." Id.  These allegations do not show
> that Dr. Snaidman violated Plaintiff's constitutional rights, since a
> witness who testifies in a judicial proceeding enjoys absolute
> immunity from damages under § 1983 for false testimony.  See

6

Briscoe v. LaHue, 460 U.S. 325, 330-346 (1983) (police officer who testifies in criminal trial enjoys absolute witness immunity for false testimony); Kulwicki v. Dawson, 969 F.2d 1454, 1467 and n.16 (3d Cir. 1992) (witness who testifies in judicial proceeding is absolutely immune for false testimony); Williams v. Hepting, 844 F.2d 138, 143 (3d Cir. 1988) (witness is entitled to absolute immunity from civil liability under § 1983 for perjured testimony at preliminary hearing and suppression hearings). Thus, Plaintiff's claims against Dr. Snaidman must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff maintains that Cindy Sweeney violated his constitutional rights as follows. On an unspecified date, Plaintiff "was prescribed certain things for which Administrator Cindy Sweeney has denied them and told me to buy my own." (Docket entry #1-1 at p. 8.) In addition, on an unspecified date, Plaintiff "asked for outdoor yard access but was denied by Cindy Sweeney stating, 'It was not my yard period,' even though not one person was using the yard." (Id.) The denial of a request to go to the yard on one unspecified occasion does not rise to the level of a constitutional violation. Moreover, the mere allegation that Sweeney denied Plaintiff's request for free access to unspecified "prescribed things" is too vague to state a constitutional claim of denial of access to medical treatment. The claims against Sweeney will accordingly be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's reference to Dr. Gabriel in the body of the complaint is even more cryptic. Plaintiff alleges merely that he "spoke to Dr. Gabriel about breathing problems due to indoor smoking, a serious black mold problem inside the building, indoor welding that has taken place since I have been here, etc, and asked for outdoor yard access but was denied by Cindy Sweeney . . ." (Docket entry #1-1 at p. 8.) Significantly, Plaintiff does not state that he suffers with a breathing problem himself or even describe the nature of the breathing problem to which he refers. Nor does the complaint even insinuate that Dr. Gabriel ignored a request for medical care for a serious medical need communicated by Plaintiff. Rather, it can be inferred that, to the extent that Plaintiff asked Dr. Gabriel for access to the yard (in order to avoid second hand smoke and mold), Gabriel reasonably referred the request to Sweeney. The Complaint fails to allege facts showing that Dr. Gabriel violated Plaintiff's constitutional rights. Accordingly, the claims against

7

Dr. Gabriel will be dismissed for failure to state a claim upon
which relief may be granted.

In exhibit A to the Complaint, Plaintiff states that on March 1,
2009, defendant Officer Smith instructed Plaintiff to get out of the
medication line after Plaintiff refused to take a cup of pills that a
nurse gave Plaintiff in response to his request for cough syrup.
(Docket entry #1-1 at p. 10.)  Plaintiff asserts that Sgt. Franks
violated his constitutional rights by refusing to act when Franks
heard Smith instructing Plaintiff to leave the medication line.
Plaintiff further states that Smith told Plaintiff to get out of Smith's
unit when Plaintiff requested soap on one unspecified occasion and
ice on another.  Although Plaintiff describes Smith's language as
unprofessional and non-therapeutic, it is clear that an officer's
verbal instruction directing a committed patient to leave the
medication line (when the patient refuses the medication offered)
and to exit a unit (when the patient asks for soap or ice) does not
rise to a constitutional violation, however vulgar the language
used.  As the Complaint makes no further allegations regarding
Franks or Smith, the claims against those defendants will be
dismissed for failure to state a claim upon which relief may be
granted.

(Docket Entry #11, pp. 8-11.)

On July 6, 2010, Plaintiff attempted to correct the absence of facts in the original

Complaint by filing a six-page document captioned "JOSEPH ARUANNO v. OFFICER SMITH,

Docket #09-cv-1070 (JLL-CCC), 'AMENDED COMPLAINT,' Dear Sirs:"  (Docket Entry #14,

p. 1.)  This Court will screen the Amended Complaint for failure to state a claim, as required by

28 U.S.C. § 1915(e)(2)(B).

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat.

1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil

action in which a plaintiff is proceeding in forma pauperis and to sua sponte dismiss any claim if

8

the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B).

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

---

[2] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

> assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis

when reviewing a complaint for dismissal for failure to state a claim:

> To determine the sufficiency of a complaint under the [Iqbal]
> pleading regime . . . , a court must take three steps:  First, the court
> must "tak[e] note of the elements a plaintiff must plead to state a
> claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth." Id. at
> 1950.  Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed

liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89, 94

(2007).

### III.  DISCUSSION

A.  Elements of the Claim

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to

state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S. Ct. at 1947-48.  Section 1983

provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,
> or causes to be subjected, any citizen of the United States or other

10

> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person

deprived him or caused him to be deprived of a right secured by the Constitution or laws of the

United States, and (2) the deprivation was done under color of state law.  See West v. Atkins,

487 U.S. 42, 48 (1988).

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial

detainee prior to an adjudication of guilt in accordance with due process of law.  See Bell v.

Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005).  As the

Supreme Court explained,

> if a particular condition or restriction of pretrial detention is
> reasonably related to a legitimate governmental objective, it does
> not, without more, amount to "punishment."  Conversely, if a
> restriction or condition is not reasonably related to a legitimate
> goal - if it is arbitrary or purposeless - a court permissibly may
> infer that the purpose of the governmental action is punishment
> that may not constitutionally be inflicted upon detainees qua
> detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at

times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at

546.  "Restraints that are reasonably related to the institution's interest in maintaining

[institutional] security do not, without more, constitute unconstitutional punishment, even if they

are discomforting and are restrictions that the detainee would not have experienced had he been

11

released while awaiting trial." Id. at 540. "In assessing whether the conditions are reasonably

related to the assigned purposes, [a court] must further inquire as to whether these conditions

cause [detainees] to endure [such] genuine privations and hardship over an extended period of

time, that the adverse conditions become excessive in relation to the purposes assigned to them."

Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d

984, 992 (3d Cir. 1983)). The Fourteenth Amendment standard of unconstitutional punishment,

like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective

component and a subjective component:

> Unconstitutional punishment typically includes both objective and
> subjective components. As the Supreme Court explained in
> Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component
> requires an inquiry into whether "the deprivation [was] sufficiently
> serious" and the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .
> The Supreme Court did not abandon this bipartite analysis in Bell,
> but rather allowed for an inference of mens rea where the
> restriction is arbitrary or purposeless, or where the restriction is
> excessive, even if it would accomplish a legitimate governmental
> objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

To state a cognizable medical claim, detained persons must "demonstrate (1) that the

defendants were deliberately indifferent to their medical needs and (2) that those needs were

serious." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A medical need is serious where

it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person

would easily recognize the necessity for a doctor's attention." Monmouth County Correctional

Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

"Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 129 S. Ct. at 1948.[3]  To establish deliberate indifference, the subjective component of a medical claim, a plaintiff must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).  "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001).  Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106.

B.  Analysis of the Amended Complaint

Although the Amended Complaint (docket entry #14), is captioned simply "Joseph Aruanno v. Officer Smith," the narrative (which does not contain numbered paragraphs and is not written in chronological or any order) indicates that Plaintiff seeks to assert § 1983 claims against all individual defendants listed in the original Complaint, except Dr. Gabriel.  Thus, this Court will operate on the premise that Plaintiff is attempting to assert § 1983 claims against Officer Jeff Smith, Nurse Morgan, Sgt. Franks, Dr. Merrill Main, Dr. Vivian Snaidman,

---

[3] <u>Accord</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").

Administrator Cindy Sweeney, DHS Commissioner Jennifer Velez, DOC Commissioner George

Hayman.  However, contrary to this Court's explicit instructions, the Amended Complaint

consists almost entirely of conclusions, which this Court is required to disregard under Iqbal.[4]

      The meager non-conclusory factual assertions in the Amended Complaint, moreover, are

so general that many do not relate to any particular defendant.  For example, Plaintiff asserts:

"on 9/17/09 the defendants came into JA's cell and brutally assaulted him in front of other

patients and staff . . . .  Finally after 6 weeks JA was permitted to see the doctor who stated 'IT

WAS TOO LATE.  THAT JA PROBABLY HAD BROKEN RIBS THAT NEEDED

ATTENTION AT THE TIME OF THE INCIDENT, AND PROBABLY NEEDED STITCHES

TO THE HEAD, ETC. . . . .  [I]t should not take 6 weeks to see a doctor when a cough becomes

a full blown cold or flu, then is passed epidemic style to all the other prisoners/patients/etc., only

to see the doctor when it is over.  Deliberate Indifference? Clearly!"  (Docket Entry #14, p. 3.)

These allegations do not state a claim of excessive force because Plaintiff does not identify who

did what to him, and the statement that defendants "brutally assaulted him" is a conclusion that is

not substantiated by allegations setting forth what each defendant did.  Similarly, these

allegations do not state a denial of medical claim against any defendant either, as Plaintiff does

---

[4] For example, Plaintiff asserts that defendant Smith "increased the level of harassment and assaultive behavior, contrary to the 1st and 14th Amendments" (Docket Entry #14, p. 1); "Dr. Main, J. Velez and G. Hayman . . . have been notified for YEARS by JA through institutional remedies, in-person meetings, and through other lawsuits such as #01-789; #04-3066; etc. . . , ALL had been INFORMED and all personally chose to allow the violations and harm to continue.  They, along with Sgt. Franks who stood there and was asked for help by JA, 'KNEW OF, CONDONED, AND WILLFULLY AND MALICIOUSLY AGREED TO SUBJECT JA TO HARSH CONDITIONS OF CONFINEMENT'" (id., p. 2); "JA cannot even address serious medical problems because the defendants will only use them to continue his commitment . . .  In short JA needs psychological and physical[] attention desperately but is being denied such . . " (id., p. 3.)

not assert specific facts supporting the conclusion that he had a serious medical need or the conclusion that a particular defendant was deliberately indifferent to that serious medical need. Moreover, the amended complaint in <u>Aruanno v. Caldwell</u>, Civil No. 09-5652 (WJM) (D.N.J. filed Nov. 5, 2009), involves Plaintiff's claim that on September 17, 2009, Officer Caldwell (who is not named as a defendant here) punched and kicked Plaintiff.  As the alleged excessive force claim raised here duplicates that raised in <u>Aruanno v. Caldwell</u>, Civil No. 09-5652 (WJM) (D.N.J. filed Nov. 5, 2009), and Plaintiff's allegations here with respect to the events of September 17, 2009, are not sufficient to state a § 1983 claim, in any event, this Court will dismiss the claim relating to  September 17, 2009.

The Amended Complaint does refer to Nurse Morgan, Officer Smith, Dr. Snaidman, and Cindy Sweeney.  However, once Plaintiff's conclusions have been disregarded, the few statements asserting what these defendants actually did merely repeat allegations in the original Complaint (which were found deficient) and are not sufficient to state the elements of a § 1983 claim against any one of these defendants.  With respect to Dr. Snaidman, Plaintiff essentially repeats the allegations this Court found deficient in the original Complaint:  "Dr. Snaidman clearly was agitated that JA EXERCISED HIS CLEARLY ESTABLISHED RIGHT TO REMAIN SILENT under the 1st, 5th and 14th Amendments, then obviously maliciously gave knowingly false statements in retaliation after expressing frustration, which are at issue in his Habeas . . ."  (Docket Entry #14, p. 2.)  As Plaintiff failed to correct the deficiencies with respect to any claim against Dr. Snaidman, this Court will dismiss the claims asserted against Dr. Snaidman with prejudice.

With respect to Cindy Sweeney, Plaintiff asserts that "the court addresses defendant Cindy Sweeney stating 'THE REQUEST TO GO TO THE YARD 'ONE' TIME DOES NOT RISE TO THE LEVEL OF CONSTITUTIONAL VIOLATION.'  And where once again it was not one time but the entire time, or the 15 months she was here before she was also removed, where JA has been subjected to excessive amounts of second-hand smoke, including from staff." (Id., p. 4.)  However, the second-hand smoke allegations regarding defendant Sweeney are the subject of the complaint and amended complaint in Aruanno v. Green, Civil No. 09-1542 (JLL) (D.N.J. filed April 2, 2009).  Because the allegations in this Amended Complaint are not sufficient to state a claim against Sweeney and the second-hand smoke claim duplicates the claim in Civil No. 09-1542 (JLL), thus, this Court will dismiss defendant Cindy Sweeney from this action.

With respect to Nurse Morgan and Officer Smith, Plaintiff also repeats what he alleged in the original Complaint:

> JA went to the medical area to get cough syrup, which minimizes the throat irritations and cough symptoms, and where "nurse" Morgan insisted that JA take certain drugs that make him sick, and which he may be allergic to according to the doctor, for which he "refused" the pills on those grounds.  For which at that point for nurse Morgan to deny JA medication he needed if he did not take harmful pills, that were not prescribed, clearly become the "DELIBERATE INDIFFERENCE" standard . . .
>
> And where SMITH told JA "IF YOU COME TO MY AREA AGAIN I WILL PLACE YOU IN LOCK-UP," which is the medical area where JA feared going there for medical attention once again becomes a DELIBERATE INDIFFERENCE . . . .
>
> And for nurse Morgan and Officer Smith to deny JA an effective old remedy such as cough syrup, then for Smith to scream, curse, and threaten to place JA in lock-up where he has been subjected to

16

> long periods of time to beatings and without his property including
> legal papers, is the "INTIMIDATING" that is addressed in
> "ESTELLE V. GAMBLE" . . .

(Docket Entry #14, pp. 1, 2, 5.)

Since Plaintiff merely repeats the allegations against Morgan and Smith that this Court found did not state a claim in the original Complaint, and Plaintiff has failed to correct the deficiencies concerning claims against those defendants, this Court will dismiss the claims against those defendants.

As the allegations in the Amended Complaint repeat the allegations previously found deficient, do not assert sufficient facts to state a denial of medical care claim, and duplicate claims raised in other actions, the Court finds that further amendment of the Complaint would be futile. The Complaint will therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## IV.  CONCLUSION

For the reasons set forth above, the Court dismisses the Amended Complaint with prejudice. An appropriate Order accompanies this Opinion.

 /s/ Jose L. Linares_____
**JOSE L. LINARES, U.S.D.J.**

Dated: June 27, 2011